**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL GARGIULO, | : | |
| | : | |
| Petitioner, | : | Civil No. 09-0775 (NLH) |
| | : | |
| v. | : | |
| | : | **O P I N I O N** |
| GEORGE W. HAYMAN, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

> ROBERT CARTER PIERCE
> 425 Pompton Avenue
> Cedar Grove, NJ 07009
> Attorney for Petitioner

**Noel L. Hillman**, District Judge:

On February 19, 2009, the Clerk received the instant petition for a Writ of Habeas Corpus executed, pursuant to 28 U.S.C. § 2254(a) ("Petition"), on behalf of petitioner Michael Gargiulo ("Petitioner"). For the reasons detailed below, the Petition will be dismissed. Specifically, the challenges to Petitioner's criminal conviction will be dismissed for lack of jurisdiction or, alternatively, as untimely, while the challenges to Petitioner's civil commitment, if any, will be dismissed for, inter alia, failure to adhere to the requirement of Habeas Rules.

I.   **Allegations Stated in the Petition**

The Petition, executed on behalf of Petitioner by his counsel Robert Carter Pierce ("Pierce"), provides the Court with the following limited information.  Petitioner, currently confined at the S.T.U. Annex of the Avenel Adult Diagnostic and Treatment Center, pled guilty to one count of sexual assault, pursuant to N.J.S.A. 2C-14:2b, and on April 3, 1998 was sentenced to a five year term of imprisonment.  See Docket Entry No. 1, at 1-2.  According to the Petition, Petitioner's direct appeal was denied by the Superior Court of New Jersey, Appellate Division, almost a decade later, i.e., on June 7, 2007.  See id. at 2.  The Petition also asserts that the Supreme Court of New Jersey denied Petitioner's request for certification on February 21, 2008.  See id.  Finally, Petitioner asserts that his application for post-conviction relief was denied by the Superior Court of New Jersey, Law Division, Atlantic County, on May 7, 2004.  See id. at 3.

The Petition states the following four grounds: (1) "Ground One: The Sexually Violent Predator Act is unconstitutional as applied to Petitioner" (asserting that the SVPA was applied to Petitioner ex post facto); (2) "Ground Two: The State violated Brady v. Maryland by not disclosing exculpatory evidence"; (3) "Ground Three: Petitioner was deprived [of] effective assistance of trial and appellate counsel"; and, finally, (4) "Ground Four: To be determined."   Id. at 4-5.

## II.  Procedural History for Public Records

It appears from public records that the petition misstates the procedural history of Petitioner's prosecution and subsequent events.  On June 19, 2003, Petitioner was released from the custody of the New Jersey Department of Corrections arising from his 1998 conviction.  <u>See</u> https://www6.state.nj.us/ DOC_Inmate/details?x=1016057&n=0.  Therefore, it appears that Petitioner is currently civilly committed, <u>i.e.</u>, committed pursuant to a chain of orders of civil commitment and/or civil re-commitment, and has been for the last six years or so.

As for the procedural history of the criminal case, according to the Superior Court of New Jersey, Appellate Division:

> [Petitioner] was indicted on seventeen counts for: endangering the welfare of J.R., A.P., R.D., C.C. and R.M., children under the age of eighteen, N.J.S.A. 2C:24-4(a) . . . ; sexual assault upon A.P., J.R., C.C. and R.M., children under the age of thirteen, N.J.S.A. 2C:14-2(b) . . . ; criminal sexual contact with R.D., a child at least thirteen years of age but younger than sixteen, N.J.S.A. 2C:14-3(b) . . . ; child abuse upon J.R., A.P., R.D., C.C. and R.M., children under the age of eighteen, N.J.S.A. 9:6-3 . . . ; and criminal restraint of C.C. and R.M., N.J.S.A. 2C:13-2 . . . . [Petitioner] pled guilty to [N.J.S.A. 2C:14-2(b) charges] in return for the State's recommendation of a five-year sentence with no parole eligibility and dismissal of the remaining . . . counts . . . .
> . . .
> In accordance with the terms of the negotiated plea, [Petitioner] was sentenced to a five-year term with a five-year parole bar.  In addition to appropriate fees and penalties, the court imposed community supervision for life and registration under Megan's Law, N.J.S.A.

2C:7-1 to -19.[1]  [Petitioner] appealed and [the
Appellate Division] affirmed.  [See] State v. Gargiulo,
Docket No. A-5350-97T5 ([N.J. Super.] App. Div. Oct[.]
8, 1998).  Prior to his release date, [Petitioner] was
civilly committed pursuant to the Sexually Violent
Predator Act ("SVPA"), N.J.S.A. 30:4-27.24 to 27.38,
[after serving his criminal sentence] where he remains
to date. [Petitioner] filed [his] PCR petition on May
7, 2004, which was denied [by the Superior Court, Law
Division] on May 17, 2005.

State v. Gargiulo, 2007 WL 1628270, at *1 (N.J. Super. App. Div.

June 7, 2007), certif. denied, 194 N.J. 270 (Feb. 21, 2008).

Therefore, it appears that Petitioner filed his application

for post-conviction relief ("PCR") on May 7, 2004, rather than

had it denied on that date, as his Petition alleges.  Moreover,

it appears that the June 7, 2007, denial of Petitioner's appeal

was rendered with regard to Petitioner's PCR, rather than his

direct appeal, and the same distinction applied to the February

21, 2008, decision by the Supreme Court of New Jersey to deny

Petitioner certification.  Finally, it appears that Petitioner's

---

[1]   § 2C:7-1 provides as follows:

a.   The danger of recidivism posed by sex offenders and
     offenders who commit other predatory acts against
     children, and the dangers posed by persons who prey on
     others as a result of mental illness, require a system
     of registration that will permit law enforcement
     officials to identify and alert the public when
     necessary for the public safety.

b.   A system of registration of sex offenders and offenders
     who commit other predatory acts against children will
     provide law enforcement with additional information
     critical to preventing and promptly resolving incidents
     involving sexual abuse and missing persons.

direct appeal was abandoned after the Appellate Division affirmed his conviction and/or sentence on October 8, 1998.[2]

## III. Petitioner's Challenges to His Criminal Conviction

As detailed below, if this Court is to read the Petition as setting forth challenges to Petitioner's criminal conviction and/or sentence, the Petition should be dismissed for lack of jurisdiction or, in alternative, as untimely.

### A.   This Court Lacks Jurisdiction Over the Petition

#### 1.   Failure to Meet the "In-Custody" Requirement

"[A] habeas petitioner [must] be 'in custody' under the conviction or sentence under attack at the time his petition is filed." Maleng v. Cook, 490 U.S. 488, 490-91 (1989); see also Spencer v. Kemna, 523 U.S. 1, 7 (1998); Lee v. Stickman, 357 F.3d

_____

[2] The Petition in this matter is notable for its apparent inaccuracies and sloppy presentation. The petition itself, while signed by counsel of record, is executed on the pre-printed form dispensed to the general public and correctional facilities and most often used by prisoners proceeding pro se. Oddly, sometimes the answers to the form questions are typed and sometimes handwritten; both poorly. More importantly, petitioner's current counsel appears to be well aware of the procedural history of this case since he represented Petitioner during his PCR proceedings. See Gargiulo, 2007 WL 1628270 (noting the Robert Carter Pierce, Esq, counsel of record in this matter, "argued the cause" for Petitioner, acting as Petitioner's designated counsel appointed by the State's Office of Public Defender). In light of the dismissal of the petition the court need not address whether the misstatements of the procedural history are intentional or merely negligent. In either event, petitioner's counsel is reminded of his obligation to file pleadings that comport with the requirements of Fed.R.Civ.P. 11.

338, 342 (3d Cir. 2004).  "The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." Hensley v. Mun. Court, 411 U.S. 345, 351 (1973).  As a result, "its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate."  Id.

Since there is no dispute that Petitioner's five-year term expired long before the instant Petition was either executed or filed, and the fact of Petitioner's incarceration at the time of his filing of the Petition was not a result of the judgment of conviction he is challenging in this Petition, but rather a result of his order of civil commitment (or one of his superceding orders of civil re-commitment) this Court must consider whether Petitioner's instant petition satisfies the "in custody" requirement for the purpose of challenging his 1998 criminal conviction.

In Maleng, the Court explained that the term "custody" defines not only physical confinement, but also includes circumstances entailing such limitations on a person's liberty as those imposed during parole.  See Maleng, 490 U.S. at 491; see also Hensley, 411 U.S. 345 (1973) (habeas petitioner released on own recognizance, but who suffered restraints on freedom of movement not shared by public generally, met "in custody"

requirement).  Here, this Court is mindful of the Appellate
Division's observation in State v. Gargiulo, 2007 WL 1628270, at
*1, that "[i]n addition to appropriate fees and penalties,
[Petitioner's sentencing] court imposed community supervision for
life and registration under Megan's Law, N.J.S.A. 2C:7-1 to -19."
However, the requirement of registration under Megan's Law does
not meet the "in custody" requirement.

> "Examples of 'collateral consequences' that do not
> render a petitioner in custody include the inability to
> obtain a license to engage in a particular profession,
> own or possess firearms, or hold public office."
> Sherman v. People of State of Ill., 2006 U.S. Dist.
> LEXIS 2360 (N.D. Ill. Jan. 19, 2006) (citations
> omitted); see also Birotte v. Sec'y for Dep't of Corr.,
> 236 Fed. App'x 577 (11th Cir. June 13, 2007) (noting
> that petitioner "concedes that his sentence for
> carrying a concealed firearm has  expired, and thus the
> collateral consequence of his prior conviction -- the
> removal order -- is insufficient to render him in
> custody for the purposes of § 2254(a)"); Broomes v.
> Ashcroft, 358 F.3d 1251, 1254 (10th Cir. 2004) (holding
> petitioner not "in custody" for habeas purposes when in
> federal immigration custody awaiting final removal
> determination and seeking to challenge conviction that
> served as basis for removal).  Thus, "even grievous
> collateral consequences stemming directly from a
> conviction cannot, without more, transform the absence
> of custody into the presence of custody for the purpose
> of habeas review." Lefkowitz v. Fair, 816 F.2d 17, 20
> (1st Cir. 1987); see also Torrey v. Estelle, 842 F.2d
> 234, 236 (9th Cir. 1988) ("In many cases, the
> determination that a particular consequence is
> 'collateral' has rested on the fact that it was in the
> hands of another government agency or in the hands of
> the defendant himself").

Davis v. Nassau County, 524 F. Supp. 2d 182, 187-88 (E.D.N.Y.

2007).   In fact, registration requirement posed by N.J.S.A.

2C:7-1 to -19 was found, time and again, as insufficient to provide the "in custody" status to habeas litigants.

> Several circuits have determined that a petitioner is not "in custody" for purposes of 28 U.S.C. § 2254 if petitioner's "restraints" are limited to registration requirements.  For example, in Williamson v. Gregoire, the Ninth Circuit addressed the question of whether a convicted child molester who had finished serving his sentence but was required to register under Washington state law as a sex offender, could be deemed "in custody" for purposes of § 2254. [See] 151 F.3d 1180, 1182 (9th Cir. 1998), cert. denied, 525 U.S. 1081 (1999).  The Williamson Court observed that, while the "in custody" requirement includes liberty restraints such as parole, released on own recognizance,  and sentences of a few hours at an alcohol rehabilitation program, collateral consequences such as fines, revocations of licenses, and the inability to vote or serve as a juror are not sufficient to render the person "in custody."  See id. at 1182-83 (citing Maleng, 490 U.S. at 492).  The Williamson Court (1) held that the Washington sex offender law was more properly characterized as a "collateral consequence of conviction" rather than a restraint on liberty," see id.; and (2) found that the statute did not place a "significant restraint on [petitioner's] physical liberty."  Id. at 1183-84.  Furthermore, the registration requirement did not limit petitioner's movement or deny him entry to anywhere he may wished to go, although it may have created "some kind of subjective chill on [his] desire to travel."  Id. at 1184.  Consequently, the Williamson Court found that "the constraints of this law lack the discernible impediment to movement that typically satisfies the 'in custody' requirement."  Id.; see also Leslie v. Randle, 296 F.3d 518, 522-23 (6th Cir. 2002) (reaching same result as Williamson but analyzing Ohio's sexual predator statute); Henry v. Lungren, 164 F.3d 1240, 1242 (9th Cir. 1999) (reaching same result as Williamson but analyzing California's sex offender registration law); McNab v. Kok, 170 F.3d 1246 (9th Cir. 1999) (reaching same result as Williamson but analyzing Oregon's sex offender registration law); accord Fowler v. Sacramento County Sheriff's Dep't, 421 F.3d 1027 (9th Cir. 2005); Resendiz v. Kovensky, 416 F.3d 952 (9th Cir. 2005); Miranda v. Reno, 238 F.3d

1156 (9th Cir. 2001); <u>Cozzetti v. Ala.</u>, 1999 U.S. App. LEXIS 1318 (9th Cir. Jan. 27, 1999).

In a factually similar case, the District of New Jersey compared the Washington sex offender registration requirements to New Jersey's sex offender registration requirements and found them substantially similar. 1 <u>See</u> <u>Shakir v. New Jersey</u>, 2006 U.S. Dist. LEXIS 1322, at *5-6 (D.N.J. Jan. 16, 2006).  There, the court found that the New Jersey sex offender registration requirement did not restrict petitioner's liberty, in that it did not prevent him from traveling, and did not require him to make appearances before [*6]  state officials.  <u>See</u> <u>id</u>.  Accordingly, the court adopted the reasoning of the Ninth Circuit in <u>Williamson</u>, and held that although the petitioner was subject to New Jersey's sex offender registration requirements, he was not "in custody" for purposes of § 2254. . . . [B]ecause the requirement to register ensuing from the New Jersey sex offender statute is merely a collateral consequence to Petitioner's conviction, Petitioner's application does not satisfy the "in custody" requirement of habeas review.  Therefore, Petitioner's Petition should be dismissed for lack of jurisdiction.

<u>Shepherd v. New Jersey</u>, 2006 U.S. Dist. LEXIS 84132 (D.N.J. Nov. 17, 2006) (footnote omitted; also citing <u>Burnhart v. Thatcher</u>, 2006 U.S. Dist. LEXIS 34390 (W.D. Wash. Apr. 18, 2006); <u>Sheikh v. Chertoff</u>, 2006 U.S. Dist. LEXIS 10110 (N.D. Cal. Feb. 23, 2006); <u>D'Amario v. Lynch</u>, 2005 U.S. Dist. LEXIS 41506 (D.R.I. Dec. 29, 2005); <u>Darnell v. Anderson</u>, 2005 U.S. Dist. LEXIS 15125 (N.D. Tex. July 25, 2005); <u>Nevers v. Caruso</u>, 2005 U.S. Dist. LEXIS 8969 (E.D. Mich. May 13, 2005); <u>Lannet v. Frank</u>, 2004 U.S. Dist. LEXIS 15566 (W.D. Wis. Aug. 4, 2004); <u>Strout v. Maine</u>, 2004 U.S. Dist. LEXIS 9635 (D. Me. May 27, 2004); <u>Quair v. Sisco</u>, 359 F. Supp. 2d 948 (E.D. Cal. 2004); <u>In re Mardeusz</u>, 2004 U.S. Dist. LEXIS 4520 (N.D. Cal. Mar. 15, 2004); <u>Bohner v. Daniels</u>, 243 F. Supp. 2d

1171 (D. Or. 2003); Rouse v. Chen, 2002 U.S. Dist. LEXIS 7733
(N.D. Cal. Apr. 19, 2002); Chavez v. Superior Court, 194 F. Supp.
2d 1037 (C.D. Cal. 2002); Rankins v. San Francisco AG, 2001 U.S.
Dist. LEXIS 14715 (N.D. Cal. Aug. 31, 2001); Porcelli v. United
States, 2001 U.S. Dist. LEXIS 24649 (E.D.N.Y. July 13, 2001);
Thomas v. Morgan, 109 F. Supp. 2d 763, 2000 U.S. Dist. LEXIS
12529 (N.D. Ohio 2000); Carson v. Hood, 1999 U.S. Dist. LEXIS
17008 (D. Or. Oct. 26, 1999); Tyree v. Holt, 1999 U.S. Dist.
LEXIS 17098 (S.D. Ala. Sept. 10, 1999)).

In sum, since: (1) Petitioner's criminal sentence had fully
expired by the time of his filing of the instant Petition; (2)
the collateral consequences of his criminal conviction are
limited to the registration requirement; and (3) he cannot
"borrow" the fact of his civil confinement to overcome the
jurisdictional hurdle, Petitioner is not "in custody" for the
purposes of his 28 U.S.C. § 2254 challenges to his criminal
conviction.

### 2.   The Court Has No Coram Nobis Jurisdiction

The foregoing, thus, transforms Petitioner's challenges to
his criminal conviction into an application for writ of coram
nobis.  The writ of error coram nobis is an "infrequent" and
"extraordinary" form of relief reserved for "exceptional
circumstances." United States v. Stoneman, 870 F.2d 102, 106 (3d
Cir. 1989); United States v. Gross, 614 F.2d 365, 368 (3d Cir.

1980) (per curiam); see Carlisle v. United States, 517 U.S. 416, 429 (1996) (noting that the remedy is so extreme that it "is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate").  An application for a writ of coram nobis is used to attack allegedly invalid convictions which have continuing consequences, even though the petitioner has completed serving the sentence he is attacking and, thus, is no longer "in custody."  See Stoneman, 870 F.2d at 105-06.

Here, however, even if this Court were to leave aside the issue of whether Petitioner could ever meet the stringent requirements associated with the writ of coram nobis, this Court simply has no jurisdiction to issue such writ, since a federal court's power of coram nobis review is limited to challenges associated with *federal* convictions rendered by that particular federal court: "[o]nly the court that handed down the judgment of conviction . . . may entertain . . . a [coram nobis] petition." Goodman v. United States, 140 Fed. App'x 436 (3d Cir. N.J. 2005) (citing Obado v. New Jersey, 328 F.3d 716, 718 (3d Cir. 2003)). Hence, all Petitioner's allegations challenging his *state* conviction fall outside this Court's coram nobis jurisdiction. Consequently, even if construed as an application for writ of coram nobis, the Petition still has to be dismissed for lack of jurisdiction.

**B.   If the Jurisdictional Requirement Is Met, the Petition Should Still Be Dismissed as Untimely**

While, as the foregoing discussion illustrates, the Petition should be dismissed for lack of jurisdiction either on the grounds of the failure to meet the "in custody" requirement or in light of this Court having no power of <u>coram</u> <u>nobis</u> of state determinations, this Court is mindful of the possibility that the Appellate Division's observation, "[i]n addition to appropriate fees and penalties, [Petitioner's sentencing] court imposed community supervision for life," <u>State v. Gargiulo</u>, 2007 WL 1628270, at *1, might be indicative of Petitioner having collateral consequences to his criminal conviction other than the mere registration requirement under N.J.S.A. 2C:7-1 to -19. Although Petitioner's counsel failed to assert any other collateral consequences, this Court, out of abundance of caution, finds it prudent to examine the possibility of such scenario.

N.J. Stat. § 2C:43-6.4 provides as follows:

a.   Notwithstanding any provision of law to the contrary, a judge imposing sentence on a person who has been convicted of . . . sexual assault . . . shall include, in addition to any sentence authorized by [the Penal] Code, a special sentence of parole supervision for life.

b.   The special sentence of parole supervision for life required by this section shall commence immediately upon the defendant's release from incarceration.  . . . Persons serving a special sentence of parole supervision for life shall remain in the legal custody of the Commissioner of Corrections . . . .

Even though the Appellate Division's observation in State v. Gargiulo, 2007 WL 1628270, at *1, does not state that Petitioner was subject to "parole supervision" (rather, the opinion uses the term "community supervision"), the Court cannot ignore the possibility that Petitioner criminal sentence might have also included parole supervision for life under § 2C:43-6.4.  And, since: (1) this Court is not aware of any decision addressing the issue of whether "parole supervision" under Section 2C:43-6.4 qualifies as "custody" for the purposes of 28 U.S.C. § 2254; and (b) the language of Section 2C:43-6.4 provides that "[p]ersons serving a special sentence of parole supervision for life shall remain in the legal custody of the Commissioner of Corrections," such language, read in absence of case law clarification, suggests that the "in custody" requirement of § 2254 might be met through the imposition of a § 2C:43-6.4 sentence.  Thus, the Court cannot rule out the possibility that Petitioner might be "in custody" to challenge his criminal conviction.

### 1.   The Petition Is Untimely Under the AEDPA

However, even if the Court were to assume that Petitioner's sentence included parole supervision for life under § 2C:43-6.4, and that Section 2C:43-6.4 supplies Petitioner with the necessary "in custody" requirement, the Petition should still be dismissed as untimely.

On April 24, 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  For the purposes of Petitioner's Application, the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1).  A state-court criminal judgment becomes "final" within the meaning of §2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.  "If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired."  Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999).

The statute of limitations under § 2244(d) is subject to tolling exception(s), that is, statutory tolling and, perhaps,

equitable tolling.[3]  See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003); Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617-18 (3d Cir. 1998).  Section 2244(d)(2) requires statutory tolling for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending," 28 U.S.C. § 2244(d)(2), provided that the application to the state court seeking collateral review was filed *during* the period of limitations.  Presuming that the AEDPA statute of limitations is subject to equitable tolling, see Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998), "a litigant seeking equitable tolling [would] bear[] the burden of establishing two elements: (a) that he has been pursuing his rights diligently, and (b) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 125 S. Ct. 1807, 1814 (2005).  The Third Circuit instructs that equitable tolling could be appropriate only when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims."  LaCava v. Kyler, 398 F.3d 271, 275-276 (3d Cir. 2005).

---

[3] See Pace v. DiGuglielmo, 125 S. Ct. 1807, 1814, n.8 (2005) ("We have never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations").

Mere excusable neglect is not sufficient.[4]  See id.; see also Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).  Extraordinary circumstances have been found where (a) the defendant has actively misled the plaintiff, (b) the plaintiff has in some extraordinary way been prevented from asserting his rights, (c) the plaintiff has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (d) the court itself has misled a party regarding the steps that the party needs to take to preserve a claim.  See Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005).  Moreover, even where extraordinary circumstances do exist, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."  Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

---

[4] A claim of "ineffective assistance of counsel" does not provide a basis for equitable tolling.  See Pace, 125 S. Ct. at 1814, n.9 (dismissing the "ineffective assistance of counsel" excuse offered by the petitioner who asserted "that he received ineffective assistance of counsel at 'all levels of representation'").

Here, since it appears that Petitioner did not seek certification from the Supreme Court of New Jersey with respect to his direct appeal, the last action that took place during Petitioner's direct appeal was the October 8, 1998, entry on the Appellate Division's decision to deny Petitioner's appeal of his conviction and/or sentence.  See State v. Gargiulo, Docket No. A-5350-97T5 ([N.J. Super.] App. Div. Oct[.] 8, 1998) (noted in State v. Gargiulo, 2007 WL 1628270, at *1).  It follows that Petitioner's judgment of conviction became "final," for the purposes of AEDPA, when Petitioner's time to seek certification from the Supreme Court of New Jersey expired, see Kapral, 166 F.3d at 577, i.e., forty-five days after the Appellate Division entered its decision.  See N.J. Rules 2:4-1(a) ("Appeals from final judgments of courts . . . shall be taken within 45 days of their entry").  Since Petitioner's judgment of conviction became final on November 22, 1998, his AEDPA period of limitations expired one year later, i.e., on November 21, 1999.[5]

Therefore, by May 7, 2004, that is, the date of filing of Petitioner's PCR application, Petitioner's AEDPA period of limitations had expired about four and a half years earlier. Consequently, Petitioner's filing of his PCR application after his AEDPA period of limitations expired did not trigger the

_____

[5] New Jersey Court Rule 3:22-12, which poses a five-year limitation period for the filing of post-conviction relief petitions, has no relevance to the AEDPA period of limitations.

statutory tolling.  See Long v. Wilson, 393 F.3d 390, 394-95 (3d
Cir. 2004); Schlueter v. Varner, 384 F.3d 69, 78-79 (3d Cir.
2004).  Which, in turn, means that by February 19, 2009, i.e.,
the date of Petitioner's filing of the instant Petition, the
Petition has been time barred for about nine years and three
months, and could be deemed timely only if the Petition stated
grounds for equitable tolling covering this entire nine-year-plus
period.  Since the Petition is silent as to any grounds for
equitable tolling for this period, and the facts of Petitioner's
filings of numerous applications related to his PCR indicate that
Petitioner was indeed able to make legal filings, if he wished to
do so, the Court is constrained to dismiss the Petition as time
barred.

### 2.    **Bendolph Notice Is Not Required**

On numerous occasions, the Third Circuit has expressed
concern about the possible lack of fairness to litigants when the
district courts proceed in a way that has "potential adverse
consequences" to the litigants.  See U.S. v. Miller, 197 F.3d
644, 649 (3d Cir. 1999).  In the Miller case, the court was
specifically noted the need for procedural fairness to
petitioners when a district court re-characterizes pro se
post-conviction motions as § 2255 habeas corpus motions in light
of the restrictions imposed on petitioners by AEDPA.  To address
the fairness considerations, the court held that a pro se habeas

petitioner must be given express notice of the legal
ramifications of his pleadings.  See id. at 652.  In Mason v.
Meyers, 208 F.3d 414 (3d Cir. 2000), the Third Circuit extended
the "prophylactic notice measures" of Miller to § 2254 pro se
habeas filers.

    The Miller-Mason procedural fairness considerations and the
ensuing "prophylactic notice measures" apply to dismissals on the
grounds of statute of limitations, under the holding of United
States v. Bendolph, 409 F.3d 155 (3d Cir. May 16, 2005).

> We held in Bendolph that a district court possesses the
> authority to raise AEDPA's statute of limitations sua
> sponte during its initial consideration of a petition
> pursuant to Rule 4 of the Rules Governing Section 2254
> Cases in the United States District Courts.  Id.  In so
> holding, we followed every other Court of Appeals to
> have considered the authority bestowed upon a district
> court by Rule 4.  See e.g., Scott v. Collins, 286 F.3d
> 923, 930 (6th Cir. 2002); Hill v. Braxton,  277 F.3d
> 701, 706 (4th Cir. 2002); Herbst v. Cook, 260 F.3d
> 1039, 1042 (9th Cir. 2001); Acosta v. Artuz, 221 F.3d
> 117, 119 (2d Cir. 2000); Kiser v. Johnson, 163 F.3d
> 326, 329 (5th Cir. 1999).  Thus, the district court
> [does] not err by raising the statute of limitations
> sua sponte.  We also held in Bendolph, however, that
> prior to a summary dismissal by the district court, a
> [pro se] habeas petitioner must be afforded notice and
> an opportunity to be heard.  Bendolph, 01-2468; accord
> Hill, 277 F.3d at 707 ("We believe justice requires the
> district court to give the pro se § 2254 petitioner
> prior notice and an opportunity to respond"); Scott,
> 286 F.3d at 930; Herbst, 260 F.3d at 1043; Acosta, 221
> F.3d at 121.

Holden v. Mechling, 133 Fed. Appx. 21, 23-24 (3d Cir. 2005).

    Here, Petitioner is represented by Pierce, and Pierce is
presumed to be aware of the AEDPA requirements.  Therefore, no

Bendolph notice is due to Petitioner.  However, in light of the poor quality of the Petition, the Court will allow Petitioner to move this Court, pro se or through his counsel, for reconsideration of the Court's decision.

**IV.  Petitioner's Challenges to His Civil Commitment**

While the statements made in the Petition suggest that Petitioner was intending to challenge his judgment of criminal conviction, the Court cannot rule out the possibility that Petitioner also sought to challenge his current (or past) order or orders of civil commitment.

**A.  Habeas Rules Preclude Challenges to Different Judgments**

In the event Petitioner intended to set forth any challenges to any civil commitments, he cannot do it in the this Petition dedicated to his challenges of his criminal judgment.  Habeas Rule 2 provides that a petitioner who seeks relief from different judgments rendered by state courts must file a separate petition covering each separate judgment.  See Habeas Rule 2(e).  Thus, Petitioner's challenges to each of his civil commitment orders must be set forth in a separate petition, and if such challenges were intended to be presented in the instant Petition, they will be dismissed under Habeas Rule 2(e).

**B.    The Petition Raises "In-custody," Exhaustion and Pleading Requirement Concerns With Respect to Petitioner's Challenges to His Civil Commitment**

Since it appears plausible that Petitioner intended to set forth challenges to his civil commitment and might wish to do it in the future, the Court finds it proper to provide Petitioner with the following minimal guidance.

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). Habeas Rule 2(c) requires a § 2254 petition to "specify all the grounds for relief available to the petitioner," "state the facts supporting each ground," "state the relief requested," be printed, typewritten, or legibly handwritten, and be signed under penalty of perjury.  28 U.S.C. § 2254 Rule 2(c).

Habeas Rule 4 requires a judge to sua sponte dismiss a § 2254 petition without ordering a responsive pleading "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." 28 U.S.C. § 2254 Rule 4.  Thus, "[f]ederal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland, 512 U.S. at 856. Dismissal without the filing of an answer or the State court record has been found warranted when "it appears on the face of the petition that petitioner is not entitled to relief." Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S.

1025 (1989); <u>see also</u> <u>McFarland</u>, 512 U.S. at 856; <u>United States</u>
<u>v. Thomas</u>, 221 F.3d 430, 437 (3d Cir. 2000) (holding that vague
and conclusory allegations contained in a petition may be
disposed of summarily without further investigation by the
district court); <u>United States v. Dawson</u>, 857 F.2d 923, 928 (3d
Cir. 1988) (same).

The Supreme Court explained the pleading requirements under
the Habeas Rules as follows:

> Under Rule 8(a), applicable to ordinary civil
> proceedings, a complaint need only provide "fair notice
> of what the plaintiff's claim is, and the grounds upon
> which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47
> (1957).  Habeas Rule 2(c) is more demanding. It
> provides that the petition must "specify all the
> grounds for relief available to the petitioner" and
> "state the facts supporting each ground."  <u>See also</u>
> Advisory Committee's note on subd. (c) of Habeas Corpus
> Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have
> frequently contained mere conclusions of law,
> unsupported by any facts.  [But] it is the relationship
> of the facts to the claim asserted that is important .
> . . ."); Advisory Committee's Note on Habeas Corpus
> Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not
> sufficient, for the petition is expected to state facts
> that point to a real possibility of constitutional
> error." . . . A prime purpose of Rule 2(c)'s demand
> that habeas petitioners plead with particularity is to
> assist the district court in determining whether the
> State should be ordered to "show cause why the writ
> should not be granted."  § 2243.  Under Habeas Corpus
> Rule 4, if "it plainly appears from the petition . . .
> that the petitioner is not entitled to relief in
> district court," the court must summarily dismiss the
> petition without ordering a responsive pleading. If the
> court orders the State to file an answer, that pleading
> must "address the allegations in the petition."  Rule
> 5(b).

<u>Mayle v. Felix</u>, 545 U.S. 644, 655 (2005).

In light of the foregoing, the Court urges Petitioner not to assert, as his counsel did in this action, that the grounds of his challenges are "to be determined," since such pleading is likely to result in dismissal of these "grounds," even if the petition is executed by a pro se litigant.  Finally, the Court stresses that, in the event Petitioner elects to challenge his order of civil commitment (or civil re-commitment), Petitioner must be "in custody" under the very order he is challenging at the time of filing his Petition, and, in addition, his challenges must be duly exhausted in the state courts.[6]

---

[6] A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or . . . circumstances exist that render such process ineffective."  28 U.S.C. § 2254(b)(1); Rose v. Lundy, 455 U.S. 509, 515 (1982); Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993); see also Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001).  A petitioner must exhaust state remedies by presenting each of his federal constitutional claims to each level of the state courts empowered to hear those claims.  See Ross v. Petsock, 868 F.2d 639 (3d Cir. 1989); see also 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented").  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied.  See Picard, 404 U.S. at 275; Castille, 489 U.S. at 350.  The petitioner generally bears the burden to prove all facts establishing exhaustion.  See Toulson, 987 F.2d at 987.  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition, see Picard, 404 U.S. at 275, which means that the petitioner's reliance on the same constitutional provision is not sufficient; rather, the legal theory and factual predicate must also be the same.  See id. at 277.  Federal courts have

**V.   Certificate of Appealability**

The Court next must determine whether a certificate of appealability should issue with respect to the challenges considered in this Opinion, i.e., the challenges to Petitioner's criminal conviction.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

When a court denies a habeas petition on procedural grounds, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the

---

consistently adhered to the exhaustion doctrine "for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation."  Picard v. Connor, 404 U.S. at 275 (citations and internal quotation marks omitted).  However, exhaustion is not a jurisdictional requirement; rather, it is designed to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism.  See Granberry v. Greer, 481 U.S. 129 (1987); Rose, 455 U.S. at 516-18; O'Halloran v. Ryan, 835 F.2d 506, 509 (3d Cir. 1987); see also Szuchon v. Lehman, 273 F.3d 299, 326 (3d Cir. 2001) (the key purpose for the exhaustion requirement is to allow the state tribunal to correct constitutional errors, if any, and to establish the legal and factual basis for the state courts' position).

case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Id.

Here, the Court determined that Petitioner's claims should be dismissed as untimely or, alternatively, for lack of jurisdiction.  The Court is persuaded that reasonable jurists would not debate the correctness of these conclusion.  Therefore, no certificate of appealability will issue.

## VI. Conclusion

For the foregoing reasons, this Court dismisses the Petition, pursuant to  28 U.S.C. § 2254.  No certificate of appealability will issue, pursuant to 28 U.S.C. § 2253(C)(2).  An appropriate order accompanies this Opinion.


  s/ Noel L. Hillman
**Noel L. Hillman**
**United States District Judge**

Dated: May 13, 2009

At Camden, New Jersey